UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____ :
                                 :
RAYMOND LAMAR BROWN,             :
                                 :
          Plaintiff,             :    Civ. No. 20-8463 (NLH) (AMD)
                                 :
     v.                          :    OPINION
                                 :
                                 :
WARDEN RICHARD SMITH, et al.,    :
                                 :
          Defendants.            :
                                 :
_____ :

APPEARANCES:

Abigail M. Luhn, Esq.
Jack N. Frost, Jr., Esq.
Faegre Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ 07932-1047

Heather C. Giordanella, Esq.
Faegre Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996

     *Counsel for Plaintiff*

Victor A. Afanador, Esq.
Christopher A. Khatami, Esq.
Susana Cruz Hodge, Esq.
Anthony David Zatkos, Jr., Esq.
Lite DePalma Greenberg & Afanador, LLC
570 Broad Street, Suite 1201
Newark, New Jersey 07102

     *Counsel for Defendants Cumberland County New Jersey,*
*Charles Warren, Eugene J. Caldwell, II, Richard Smith and Jody*
*Hirata*

Stephen D. Holtzman, Esq.
Jeffrey S. McClain, Esq.
Lilia Londar, Esq.

Holtzman McClain & Londar, PC
524 Maple Avenue, Suite 200
Linwood, NJ 08221

    *Counsel for Defendants CFG Health Systems, LLC, Dr. Alan Dias and Kristina Smith*

Michael Louis Testa, Sr., Esq.
Justin Robert White, Esq.
Testa Heck Testa & White, P.A.
424 Landis Avenue
Vineland, NJ 08360

    *Counsel for Defendant Loren Joynes*

<u>HILLMAN</u>, District Judge

Defendants Cumberland County New Jersey, Charles Warren, Eugene J. Caldwell, II, Richard Smith and Jody Hirata ("County Defendants") move to dismiss Plaintiff Raymond Lamar Brown's amended complaint under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 69.  Plaintiff opposes the motion to dismiss.  ECF No. 78.  The parties jointly move to seal their briefs and certain exhibits.  ECF No. 82.

For the reasons stated below, the Court will grant the motion to dismiss in part.  The motion to seal will be granted in part.

I.   BACKGROUND

This matter is one of many cases presently before the Court in which a pretrial detainee at the Cumberland County Jail ("Cumberland Jail" or "Jail") alleges prison and county

2

officials created unconstitutional conditions of confinement when they failed to respond to the COVID-19 pandemic that began in early 2020.  A class action addressing the Jail's failures in COVID-19 testing, protection, and quarantine and isolation procedures and seeking only injunctive relief is presently pending before the Court.  Brown v. Warren, 20-7907 ("Class Action").  Plaintiff Raymond Lamar Brown, a lead plaintiff in the Class Action, filed his original complaint pro se, ECF No. 1, and filed an amended complaint with leave of court after the appointment of pro bono counsel.[1]  ECF No. 58 ("Am. Compl.").  The County Defendants now move to dismiss the amended complaint.  ECF No. 69.

## II.   STANDARD OF REVIEW

When considering a motion to dismiss a complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party.  A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the

---

[1] The Court acknowledges and appreciates the advocacy of Abigail M. Luhn, Esq., Jack N. Frost, Jr., Esq., and Heather C. Giordanella, Esq. of Faegre Drinker Biddle & Reath LLP, who accepted appointment as pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1) and this Court's Plan for Appointment of Attorneys in Pro Se Civil Actions, see App. H of the Local Civil Rules of the District of New Jersey.

grounds upon which it rests that make such a claim plausible on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must "tak[e] note of the elements [the] plaintiff must plead to state a claim.  Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks omitted).  "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings."  Id. at 790.

III. DISCUSSION

A.   Failure to Exhaust

The County Defendants argue the complaint must be dismissed because Plaintiff failed to exhaust his administrative remedies

as required by the Prison Litigation Reform Act ("PLRA").  See 42 U.S.C. § 1997e(a).  Failure to exhaust administrative remedies is an affirmative defense under the PLRA, and "inmates are not required to specifically plead or demonstrate exhaustion in their complaints."  Jones v. Bock, 549 U.S. 199, 216 (2007). See also Small v. Camden Cty., 728 F.3d 265, 268 (3d Cir. 2013) ("Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff.").  Although he was not required to, Plaintiff alleges in the amended complaint that "[u]pon information and belief, Plaintiff has exhausted the remedies available to him, in an attempt to rectify the adverse effects of the retaliatory actions taken against Plaintiff by Defendants as enumerated in the Amended Complaint."  Am. Compl. ¶ 41.

The County Defendants attach copies of the Jail's Inmate Handbook, Grievance Forms, and Plaintiff's medical and Cell History Records for the Court's consideration.  "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  A party's reliance upon factual materials outside the pleadings would generally require the Court to treat a motion to dismiss as one for summary judgment under Rule 56, but the Court may

5

consider a "'document integral to or explicitly relied upon in the complaint.'" In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999) (quoting Burlington Coat Factory, 114 F.3d at 1426) (emphasis omitted).  The Court may also "examine an 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" Id. (quoting PBGC v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).  The attached documents do not meet either exception.

The County Defendants assert "Plaintiff fails to attach these grievances, but the Court may consider them because they were submitted in accordance with the Handbook's Grievance Procedure."  ECF No. 70 at 14.  The critical question "is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." Burlington Coat Factory, 114 F.3d at 1426 (citing In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993)).  Contrary to the County Defendants' arguments, Plaintiff's claims are not "based on" the Inmate Handbook, Grievance Forms, or his medical and Cell History Records.  The documents may contain proof of Plaintiff's claims, but the claims themselves are "based on" the

6

County Defendants' alleged actions.  Accordingly, the documents will not be considered in connection with the motion to dismiss.

The Court declines to convert the motion to dismiss into a motion for summary judgment as suggested by the County Defendants.  This Court has expressed its concerns with the administrative remedy system at the Jail on several occasions, and a dismissal request based on failure to exhaust "depends on the reliability of the Prison's recordkeeping system." Paladino v. Newsome, 885 F.3d 203, 211 (3d Cir. 2018).  "Here, the record is bereft of evidence that the Prison's recordkeeping system is reliable.  Without such evidence, we cannot determine if Defendants have met their burden to prove that [plaintiff] 'failed to exhaust each of his claims.'"  Id. (quoting Small v. Camden Cty., 728 F.3d 265, 269 (3d Cir. 2013)) (emphasis in original).  Discovery may yield information relevant to the exhaustion issue, so the Court concludes the parties should have the benefit of discovery before presenting dispositive arguments regarding exhaustion.

Plaintiff's assertion that he exhausted all available remedies is a legal conclusion that the Court need not accept as true on a motion to dismiss.  See Connelly v. Lane Const. Corp., 809 F.3d 780, 789-90 (3d Cir. 2016) (noting that allegations "embod[ying] a legal point" are not entitled to the presumption

7

of truth on a motion to dismiss).  However, the Court will not dismiss the complaint on exhaustion grounds because Plaintiff is not required to plead or prove exhaustion in his complaint. Defendants may raise this defense in an appropriately supported motion for summary judgment.  See Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018).

B.   Claim-Splitting Doctrine

The County Defendants further argue that Plaintiff's claims are precluded by the claim-splitting doctrine, "the longstanding bar against having a single party-plaintiff simultaneously maintain two actions against the same defendant."  Pennsylvania v. Navient Corp., 967 F.3d 273, 286 (3d Cir. 2020) (citing Walton v. Eaton Corp., 563 F.2d 66, 70 (3d Cir. 1977) (en banc)).  They argue that Plaintiff's status as a representative in the Class Action warrants dismissal "because a final judgment in the Class Action would nevertheless preclude this action." ECF No. 70 at 15.

Plaintiff's action is distinguishable from Walton.  "There, a single plaintiff filed two separate employment lawsuits based on the same underlying facts, in the same court, against the same defendant."  Navient Corp., 967 F.3d at 286 (citing Walton, 563 F.2d 69–70).  Plaintiff did not file the Class Action as a single plaintiff seeking damages for himself; it was filed with

other class representatives on behalf of present and future
inmates at the Cumberland Jail.  Therefore, "a single plaintiff"
did not file both actions.  More significantly, the Class Action
and Plaintiff's complaint serve entirely different purposes.

Plaintiffs in the Class Action seek "the means to take
reasonable precaution against the spread of the [COVID-19] virus
and receive an appropriate level of treatment and care . . . ."
Consent Order, Brown v. Warren, No. 20-7907 (D.N.J. May 13,
2021) (ECF No. 126 at 2).[2]  Here, Plaintiff seeks compensation
for the alleged injuries that he personally incurred at the
Cumberland Jail.  The County Defendants' argument that a final
order in the Class Action will preclude any relief here "is a
distraction.  [Defendants] can only speculate as to what will
happen if both actions proceed."  Navient Corp., 967 F.3d at 286
n.9.  Moreover, the Consent Order specifically stated that the
Class Action "does not adjudicate or resolve any other claim
asserted in any other action or petition brought by any current
or future member of the class or any other former detainee at
the Cumberland Jail for monetary damages, nominal damages,
habeas corpus, or individual relief not encompassed by the
within Consent Order."  Consent Order, No. 20-7907 (ECF No. 126
at 7).

---

[2] The Court takes judicial notice of this public record.

The Court will not dismiss the complaint under the claim-splitting doctrine.

C.    Retaliation

The County Defendants argue that Plaintiff has not stated a claim for retaliation.  ECF No. 70 at 18.  "To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) 'he suffered some "adverse action" at the hands of prison officials,' and (3) 'his constitutionally protected conduct was "a substantial or motivating factor" in the decision' to take that action." Wisniewski v. Fisher, 857 F.3d 152, 156 (3d Cir. 2017) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)).  Plaintiff alleges the "retaliatory actions were taken by some of all of the Defendants against Plaintiff as a form of punishment to prevent or intimidate Plaintiff from further pursuing the Class Action and/or to suppress his right to complaint about his treatment through the grievance system."  Am. Compl. ¶ 80.  It is well established that the filing of lawsuits or grievances constitutes conduct protected by the First Amendment, see Atkinson v. Taylor, 316 F.3d 257, 269-70 (3d Cir. 2003), and the County Defendants do not dispute the first element.

To satisfy the second element, the adverse action must be "sufficient to deter a person of ordinary firmness from

exercising his constitutional rights." Mack v. Warden Loretto
FCI, 839 F.3d 286, 297 (3d Cir. 2016) (internal quotation marks
omitted). The Third Circuit has found spending "several months
in disciplinary confinement," Mitchell v. Horn, 318 F.3d 523,
530 (3d Cir. 2003); "transfer[] to a distant prison where
[prisoner's] family could not visit him regularly," Rauser, 241
F.3d at 333; and "placement in administrative segregation,"
Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000), could
satisfy the adverse action element depending on the facts of the
particular case. See also Atkinson, 316 F.3d at 269 (finding
adverse actions in being "move[] to administrative segregation,
. . . forced to disrobe unnecessarily, denied food and access to
legal materials and advice, and threatened and subdued by the
use of excessive force").

Plaintiff alleges he was "transferred out of the 'C Pod'
unit of the Cumberland County Jail to the 'Dorms' section of the
Cumberland County Jail" in an effort to keep him from
communicating with other Class Action plaintiffs housed in C
Pod, Am. Compl. ¶¶ 46-51; "removed from his restricted, low-
sodium diet," id. ¶ 56; put into solitary confinement for five
days, id. ¶¶ 66-67; and denied medical care, id. ¶¶ 71-77. It
is plausible that a person of ordinary firmness would be
deterred from exercising his constitutional rights by these

actions.  See Allah, 229 F.3d at 225 (concluding that
"confinement in administrative segregation" resulting "in
reduced access to phone calls, reduced access to the commissary,
reduced access to recreation, confinement in his cell for all
but five hours per week" plausibly stated adverse action).

The final element requires Plaintiff to allege facts
supporting an inference that there was "a causal link between
the exercise of his constitutional rights and the adverse action
taken against him, or more specifically, that his
constitutionally protected conduct was a substantial or
motivating factor in the decision to take that action."  Oliver
v. Roquet, 858 F.3d 180, 190 (3d Cir. 2017) (cleaned up).  The
Third Circuit recognizes "three avenues to establish causation."
Dondero v. Lower Milford Twp., 5 F.4th 355, 361 (3d Cir. 2021).
"First, 'an unusually suggestive temporal proximity between the
protected activity and the allegedly retaliatory action' . . . .
Second, 'a pattern of antagonism coupled with timing' may
establish a causal link. . . . Finally, the record as a whole
may reveal evidence implying causation."  Id. at 361-62 (quoting
Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d
Cir. 2007)).

Accepting the facts alleged in the amended complaint as
true and giving Plaintiff the benefit of all reasonable

12

inferences, Plaintiff has plausibly alleged a causal link under
the first and second theories.  The County Defendants argue a
lack of temporary proximity because the original Class Action
complaint was filed in June 2020 and Plaintiff alleges
retaliation in October and November 2020 and into 2021.  See,
e.g., ECF No. 70 at 23-24.  However, a glance at the public
docket in the Class Action indicates that the plaintiffs
actively pursued their case in the months following the original
filing.  See generally Class Action, No. 20-7907.  It is not
unreasonable to believe that the Class Action plaintiffs'
continuous, protected activities before this Court motivated the
County Defendants to take actions against Plaintiff.

Moreover, the Court takes judicial notice of public filings
in the Class Action that allege a pattern of harassment and
retaliation against plaintiffs by Jail officials and staff.[3]

---

[3] When considering a motion to dismiss, a court may take judicial
notice of "a fact that is not subject to reasonable dispute
because it ... can be accurately and readily determined from
sources whose accuracy cannot reasonably be questioned."  Fed.
R. Evid. 201(b)(2).  This Court may take judicial notice of the
Class Action filings because they are matters of public record.
See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308,
322 (2007) (noting courts "ordinarily examine when ruling on
Rule 12(b)(6) motions to dismiss . . . matters of which [they]
may take judicial notice"); S. Cross Overseas Agencies, Inc. v.
Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999)
("To resolve a 12(b)(6) motion, a court may properly look at
public records, including judicial proceedings, in addition to
the allegations in the complaint.").

See, e.g., Class Action, No. 20-7907 ECF No. 128 (May 13, 2021 letter alleging a retaliatory "shake down" of C-Pod on May 11, 2021); ECF No. 147 (June 18, 2021 letter alleging "continuing harassment and retaliation directed at Plaintiffs, including allegation that "correctional officers have been told to 'tighten up' on CPOD and are imposing more discipline on Plaintiffs in CPOD"); ECF No. 332 (supplemental complaint alleging harassment and retaliation).

For purposes of the motion to dismiss, the Court's judicial notice is limited to the existence of the filings and does not reach the truth of the facts recited therein.  See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999) ("[O]n a motion to dismiss, we may take judicial notice of another court's opinion — not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.").  Accepting the facts alleged in the amended complaint as true and considering the fact that similar allegations of retaliation have been made in the Class Action, it is plausible that the County Defendants have engaged in a pattern of harassment and retaliation at the Cumberland Jail. The Court will deny the motion to dismiss the retaliation claims.

14

D.    Deliberate Indifference to Serious Medical Need

     The County Defendants argue that Plaintiff has failed to
state a deliberate indifference claim.  Claims by pretrial
detainees for failing to provide adequate medical care arise
under the Fourteenth Amendment Due Process Clause and are
analyzed "under the standard used to evaluate similar claims
brought under the Eighth Amendment[.]"  Natale v. Camden Cty.
Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).  The Court
will therefore review Plaintiff's claims under the same standard
used to evaluate similar claims brought under the Eighth
Amendment.  Moore v. Luffey, 767 F. App'x 335, 340 (3d Cir.
2019).[4]

     To state an Eighth Amendment Claim, a plaintiff must allege
facts indicating that defendants were deliberately indifferent
to his or her serious medical need.  Estelle v. Gamble, 429 U.S.
97, 104 (1976).  To accomplish this, "a plaintiff must make (1)
a subjective showing that 'the defendants were deliberately
indifferent to [his or her] medical needs' and (2) an objective
showing that 'those needs were serious.'"  Pearson v. Prison

---

[4] The Supreme Court has applied an "objectively unreasonable"
standard to analyze an excessive force claim under the
Fourteenth Amendment.  Kingsley v. Hendrickson, 576 U.S. 389,
398 (2015). However, the Third Circuit has declined to address
whether the "objectively unreasonable" standard applies to a
deliberate indifference to medical need analysis.  Moore, 767 F.
App'x at 340 n.2.

15

Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (quoting Rouse v.
Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (alteration in
original)).

"A medical need is serious if it 'has been diagnosed by a
physician as requiring treatment,' or if it's so obvious that a
lay person would easily recognize the necessity for a doctor's
attention.'" Mitchell v. Beard, 492 F. App'x 230, 236 (3d Cir.
2012) (quoting Atkinson v. Taylor, 316 F.3d 257, 272–73 (3d Cir.
2003)). "The seriousness of an inmate's medical need may also
be determined by reference to the effect of denying the
particular treatment." Monmouth Cnty. Corr. Inst. Inmates v.
Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). "[I]f 'unnecessary
and wanton infliction of pain,' results as a consequence of
denial or delay in the provision of adequate medical care, the
medical need is of the serious nature contemplated by the eighth
amendment." Id. (quoting Estelle, 429 U.S. at 103).

Plaintiff alleges he contracted COVID-19 in February 2021
and was symptomatic. Am. Compl. ¶ 29. He further alleges he is
a chronic care patient with "documented high blood pressure, and
Defendants were aware of Plaintiff's medical condition and high
blood pressure." Id. ¶¶ 57-58. He also alleges to have had an
infected tooth. Id. ¶ 75. The Court concludes Plaintiff has

alleged serious medical needs for purposes of the motion to dismiss.

The Third Circuit has found deliberate indifference "'where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" Parkell v. Danberg, 833 F.3d 313, 337 (3d Cir. 2016) (quoting Rouse, 182 F.3d at 197). Deliberate indifference also includes "ignor[ing] a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." Helling v. McKinney, 509 U.S. 25, 33 (1993). See also Hemphill v. Hochberg, No. 07-2162, 2008 WL 2668946, at *5 (D.N.J. June 27, 2008) ("Eighth Amendment liability is not limited to indifference to current serious medical problems; the risk of serious future harm to an inmate's health may also constitute a claim under the Amendment.") (citing Helling).

Plaintiff alleges the County Defendants did not perform necessary bloodwork for a year and "did not provide Plaintiff with an EKG since approximately June 2020, when Plaintiff first instituted the Class Action." Am. Compl. ¶ 74. He further alleges the County Defendants did not permit him "to see a

17

dentist from approximately June 2021 until February 2022." Id. ¶ 75.  He alleges the denial of care for his high blood pressure and infected tooth was retaliation for filing and participating in the Class Action.  Id.  ¶¶ 54-63, 70-77.  If these allegations are true, the County Defendants denied Plaintiff necessary medical care for non-medical reasons, which would qualify as deliberate indifference.  Parkell, 833 F.3d at 337.

Moreover, Plaintiff alleges the County Defendants knew about the risk COVID-19 posed to the population of the Cumberland Jail but "refused to provide necessary medical treatment and prevention measures recommended by federal government agencies such as the CDC based on non-medical, but rather administrative and/or financial reasons."  Am. Compl. ¶ 97.  "Despite repeated requests by Plaintiff to institute protective measures, Defendants refused to do so.  Moreover, Defendants failed to adequately provide for testing or monitoring that would properly contain the spread of COVID-19 virus at and within the Cumberland County Jail."  Id. ¶ 100. "Such allegations of the widespread presence of an infectious . . . disease surely suggest that Plaintiff was exposed to an unreasonable risk of serious harm."  Hemphill, 2008 WL 2668946, at *5.

The County Defendants rely on the Third Circuit's decision in Hope v. Warden York County Prison, 972 F.3d 310 (3d Cir. 2020) for the proposition that Plaintiff has failed to state a claim.  In reviewing a district court's order directing the release of immigration detainees under 28 U.S.C. § 2241, the Third Circuit concluded that the district court "abused its discretion when it held that Petitioners showed a substantial likelihood of success on the merits of their claims."  Id. at 323.  Nothing in Hope alters the pleading standards for civil rights claims; it only concluded that the detainees had failed to prove that "the Government knew of and disregarded an excessive risk to their health and safety."  Id. at 329 (emphasis in original).  See also Jones v. Ellis, et al., No. 21-13625, 2021 WL 5015921, at *3 (D.N.J. Oct. 28, 2021) (citing Hope for proposition that "a detainee asserting deliberate indifference based on exposure to COVID-19 must still establish that the Defendant had the requisite mental state, which is akin to recklessness.").  That is not the question presently before the Court.

On a motion to dismiss under Rule 12(b)(6), the Court asks only whether Plaintiff has pled "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of his claims.  Connelly v. Lane Const. Corp., 809

19

F.3d 780, 789 (3d Cir. 2016).  It must "assume all . . . factual
allegations to be true, construe those truths in the light most
favorable to the plaintiff, and then draw all reasonable
inferences from them."  Id.  "The Supreme Court has recognized
that exposure to contagious diseases may violate the Eighth
Amendment if prison officials, acting with deliberate
indifference, expose a prisoner to a sufficiently substantial
'risk of serious damage to his future health.'"  Loftin v.
Dalessandri, 3 F. App'x 658, 662 (10th Cir. 2001) (quoting
Helling v. McKinney, 509 U.S. 25, 35 (1993)).

     If Plaintiff's factual allegations are true, the County
Defendants knew the risk that COVID-19, a deadly disease with
serious aftereffects, posed to Plaintiff but failed to act due
to the costs and because they were understaffed.  This goes
beyond "mere negligence."  See Atkinson v. Taylor, 316 F.3d 257,
269 (3d Cir. 2003) (noting that plaintiff "produced evidence
that after telling prison officials about his sensitivity to ETS
no change was made in housing conditions.  This evidence
demonstrates deliberate indifference on the part of prison
officials."); Cristian A.R. v. Decker, 453 F. Supp. 3d 670, 687–
88 (D.N.J. 2020) ("By failing to implement the CDC's
instructions for the most vulnerable individuals, and by
detaining those persons in a jail setting during a rapidly

accelerating COVID-19 pandemic without providing them with
adequate means to follow hygiene and other health protocols,
Respondents have placed Petitioners at a substantially enhanced
risk for severe illness or death."); Andrews v. Cervantes, No.
CIV S-03-1218, 2008 WL 1970345, at *1 (E.D. Cal. May 5, 2008),
report and recommendation adopted, No. CIV S-03-1218, 2008 WL
2705405 (E.D. Cal. July 9, 2008) (allowing Eighth Amendment
claim to proceed based on allegations that defendants were aware
"of the spread of disease, yet refuse[d] to take any reasonable
measures to shield plaintiff from the risk of harm"); Hemphill
v. Hochberg, No. 07-2162, 2008 WL 2668946, at *5 (D.N.J. June
27, 2008) (allowing Eighth Amendment claim to proceed against
doctor for "fail[ing] to inform inmates of the nature of their
ailment" and "communicat[ing] to the inmates that their medical
condition was not contagious, thereby enabling the spread of
scabies within the penal institution").

    "The context of the Government's conduct is essential to
determine whether it shows the requisite deliberate indifference
that 'shocks the conscience' for a substantive due process
violation." Hope, 972 F.3d at 330.  This is a fact-intensive
inquiry, and the Court cannot assess the reasonableness of the
County Defendants' response on a motion to dismiss.  Plaintiff
will ultimately have to prove that the County Defendants were

deliberately indifferent, but he has satisfactorily alleged that
they knew of and disregarded an excessive risk to his health and
safety.  The Court will deny the motions to dismiss this claim.

E.    Monell and Supervisory Liability

       The County Defendants argue that Plaintiff has not stated a
claim against Cumberland County or Defendants Smith,
Warren, Caldwell, and Hirata as supervisors.

       "A municipality cannot be held liable for the
unconstitutional acts of its employees on a theory of respondeat
superior.  A plaintiff seeking to hold a municipality liable
under section 1983 must demonstrate that the violation of rights
was caused by the municipality's policy or custom."  Thomas v.
Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014) (citing
Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).
Plaintiff alleges Cumberland County "had final policymaking
authority with regard to establishing policies and procedures
governing the conduct of the County employees performing
correctional functions on behalf of the County."  Am. Compl. ¶
120.  "The County established and/or approved of the CCDOC's
policies and procedures" including but not limited to "the
policy, or lack thereof, regarding the health and safety of
inmates and detainees during the COVID-19 pandemic."  Id. ¶ 121.
Plaintiff asserts Cumberland County knew about "the pattern and

practice of retaliation against inmates" but failed to act.  Id.
¶ 123.

He further claims Cumberland County "made a deliberate
and/or conscious decision to disregard the known risk" that
COVID-19 posed to jail populations and "tolerated, permitted,
failed to correct, promoted, and/or ratified a number of
customs, patterns, or practices that condoned and/or required
Wardens and other employees (such as and including, but not
limited to, the Cumberland County Jail's Medical Director) to
turn a blind eye to and to not intervene with, the lack of
precautionary measures in CCDOC."  Id. ¶¶ 126-27.  Plaintiff
alleges these policies and customs caused his injuries.
Accordingly, Plaintiff has sufficiently alleged Cumberland
County's liability under Monell.

Plaintiff has also satisfactorily alleged supervisory
liability against Defendants Smith, Warren, Caldwell, and
Hirata.  "Government officials may not be held liable for the
unconstitutional conduct of their subordinates under a theory of
respondeat superior."  Ashcroft v. Iqbal, 556 U.S. 662, 676
(2009).  "Individual defendants who are policymakers may be
liable under § 1983 if it is shown that such defendants, 'with
deliberate indifference to the consequences, established and
maintained a policy, practice or custom which directly caused

[the] constitutional harm." A.M. ex rel. J.M.K. v. Luzerne Cty.
Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (quoting
Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d
Cir. 1989)) (alteration in original).  A supervisor may also "be
personally liable under § 1983 if he or she participated in
violating the plaintiff's rights, directed others to violate
them, or, as the person in charge, had knowledge of and
acquiesced in [their] subordinates' violations."  Id.

     "[O]ne way — perhaps the easiest way — a plaintiff can make
out a supervisor liability claim is by showing that 'the
supervisory official failed to respond appropriately in the face
of an awareness of a pattern of such injuries.'" Beers-Capitol
v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001) (quoting Sample v.
Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).  However, "there
are situations in which the risk of constitutionally cognizable
harm is so great and so obvious that the risk and the failure of
supervisory officials to respond will alone support findings of
the existence of an unreasonable risk, of knowledge of that
unreasonable risk, and of indifference to it." Sample, 885 F.2d
at 1118.

     Defendants Smith, Warren, and Caldwell are past and current
Wardens of the Cumberland Jail.  Am. Compl. ¶¶ 5-7.  Plaintiff
alleges a dangerous, highly contagious disease was allowed to

run rampant in the Cumberland Jail for months before they took substantive action to address it.  Prison officials "may [not] be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms."  Helling v. McKinney, 509 U.S. 25, 33 (1993).  See also Hutto v. Finney, 437 U.S. 678, 682-83 (1978) (finding Eighth Amendment violation in part due to "some prisoners suffer[ing] from infectious diseases such as hepatitis and venereal disease" comingling with other inmates and sharing laundry facilities).  "We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year."  Helling, 509 U.S. at 33.

If Plaintiff's factual allegations are true, Defendants Smith, Warren, and Caldwell ignored warnings from various government agencies and actively took steps that endangered Plaintiff and the other inmates of the Cumberland Jail because of financial and staffing concerns.  It is plausible that the risk of harm to Plaintiff was "so great and so obvious" that the failure to act could support a finding of deliberate indifference.

25

Plaintiff alleges Defendant Hirata, the Deputy Cumberland County Administrator, is "responsible for, among other things, the development, implementation, and administration of programs within the Cumberland County Jail." Am. Compl. ¶ 8. He alleges she knew about the "official custom of retaliation" in the Cumberland Jail. Id. "Government custom can be demonstrated 'by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" Kirkland v. DiLeo, 581 F. App'x 111, 118 (3d Cir. 2014) (quoting Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)). There are enough facts in the amended complaint, which Court must accept as true, to infer that Defendant Hirata "tacitly endorsed a practice" of retaliating against Plaintiff and other detainees for exercising their constitutional right to petition for redress of grievances. Id. The Court will not dismiss these claims.

F.   State Law Claims

The County Defendants also seek dismissal of Plaintiff's claims under the New Jersey Constitution and his tort claims.[5] The New Jersey Civil Rights Act, N.J.S.A. § 10:6-1, et seq. ("NJCRA") recognizes "[t]wo types of private claims . . . : (1)

---

[5] The Court has supplemental jurisdiction over Plaintiff's state law claims.   28 U.S.C. § 1367(a).

a claim when one is 'deprived of a right,' and (2) a claim when one's rights have been 'interfered with by threats, intimidation, coercion or force.'"  Lapolla v. Cnty. of Union, 157 A.3d 458, 469 (N.J. Super. Ct. App. Div. 2017).  Plaintiff alleges the County Defendants violated his state free speech right and his right to be free from cruel and unusual punishment.  Am. Compl. ¶ 103 (citing N.J. Const. art. I, ¶ 6); Am. Compl. ¶ 105 (citing N.J. Const. art. I, ¶ 12).

"The NJCRA was modeled after 42 U.S.C. § 1983 and '[c]ourts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983.'"  Coles v. Carlini, 162 F. Supp. 3d 380, 404 (D.N.J. 2015) (quoting Chapman v. New Jersey, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009)) (alteration in original).  "Courts in this district have previously recognized that 'the New Jersey Civil Rights Act is interpreted analogously to 42 U.S.C. § 1983.'"  Id. (quoting Martin v. Unknown U.S. Marshals, 965 F. Supp. 2d 502, 548 (D.N.J. 2013)).  The Court has already determined that Plaintiff has sufficiently stated First Amendment retaliation and Fourteenth Amendment deliberate indifference claims.  As courts interpret the New Jersey Constitution analogously to the federal Constitution, the Court will permit the NJCRA claims to proceed

27

as well.  See Trafton v. City of Woodbury, 799 F. Supp. 2d 417,
444 (D.N.J. 2011).

Plaintiff also alleges the torts of intentional infliction
of emotional distress ("IIED") and negligent infliction of
emotional distress ("NIED").  As an initial matter, Plaintiff's
IIED claim against Cumberland County must be dismissed.  Under
the New Jersey Tort Claims Act ("NJTCA"), "[a] public entity is
liable for injury proximately caused by an act or omission of a
public employee within the scope of his employment in the same
manner and to the same extent as a private individual under like
circumstances."  N.J.S.A. § 59:2-2(a).  However, "[a] public
entity is not liable for the acts or omissions of a public
employee constituting a crime, actual fraud, actual malice, or
willful misconduct."  N.J.S.A. § 59:2-10.  "Thus, there can be
no vicarious liability by a public entity for intentional torts
committed by its employees."  Hoag v. Brown, 935 A.2d 1218, 1230
(N.J. Super. Ct. App. Div. 2007).  The Court must dismiss
Plaintiff's IIED claim against Cumberland County.  See Ward v.
Barnes, 545 F. Supp. 2d 400, 420-21 (D.N.J. 2008); Soto v. City
of Newark, 72 F. Supp. 2d 489, 497 (D.N.J. 1999).

To state an IIED claim against the individual defendants,
Plaintiff must plead facts showing:

the defendant acted intentionally or recklessly, both in
doing  the  act  and  producing  emotional  distress;  the

28

> conduct was so outrageous in character and extreme in
> degree as to go beyond all bounds of decency; the
> defendant's actions were the proximate cause of the
> emotional distress; and the distress suffered was so
> severe that no reasonable person could be expected to
> endure it.

Turner v. Wong, 832 A.2d 340, 347 (N.J. Super. Ct. App. Div. 2003) (citing Buckley v. Trenton Sav. Fund Soc'y, 544 A.2d 857 (N.J. 1988)).  "The standard is an objective one.  The defendant's conduct must be 'sufficiently severe to "cause genuine and substantial emotional distress or mental harm to average persons."'"  Id. at 348 (quoting Taylor v. Metzger, 706 A.2d 685, 697 (N.J. 1998)).  "The average person, of course, must be one similarly situated to the plaintiff."  Id.

Plaintiff alleges in the amended complaint that the County Defendants ignored the risks that COVID-19 posed to the inmate population at the Cumberland County Jail for months, allowing it to spread around the facility.  He alleges they ignored his requests for medical attention, despite his status as a chronic care inmate with diagnosed high blood pressure, and retaliated against him when he and other inmates brought their claims before this Court for redress.  He alleges the retaliation continued throughout the Court's examination of the Class Action.  "The inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation,

meets that standard." Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322–23 (2007) (emphasis in original).  If Plaintiff's factual allegations are true, the individual defendants' actions could plausibly be considered extreme and outrageous manner beyond all bounds of decency.  It is also plausible on the face of the amended complaint that the individual defendants caused Plaintiff to experience severe anxiety and fear that no average pretrial detainee should be expected to endure.  The Court will not dismiss the IIED claim against the individual defendants.

Nor will the Court dismiss Plaintiff's NIED claims at this time.[6]  "[A]n individual can maintain an independent tort action for negligent infliction of emotional distress in two instances." Jablonowska v. Suther, 948 A.2d 610, 618 (N.J. 2008).  One way requires the plaintiff to plead facts indicating that the plaintiff witnessed the death or serious injury of a person with whom the plaintiff had a "marital or intimate, familial relationship," the death or serious injury was caused by the defendants' negligence, and the plaintiff suffered severe

---

[6] The NJTCA permits a public entity to be held liable for the negligent conduct of its employees, so the NEID claim against Cumberland County may remain so long as Plaintiff has stated a claim against the individual defendants.  See Casciano v. City of Paterson, No. 19-9475, 2022 WL 170857, at *6 (D.N.J. Jan. 19, 2022); N.J.S.A. § 59:2-2(a).

emotional distress as a result.  Id. at 617-18 (citing Portee v. Jaffee, 417 A.2d 521 (N.J. 1980)).  Alternatively, "[a] plaintiff can demonstrate that the defendant's negligent conduct placed the plaintiff in reasonable fear of immediate personal injury, which gave rise to emotional distress that resulted in a substantial bodily injury or sickness."  Id. at 618.  See also Abouzaid v. Mansard Gardens Assocs., LLC, 23 A.3d 338, 344 (N.J. 2011) ("[I]mmediate fear of personal injury could serve as the basis for recovery for emotional distress from negligent conduct so long as 'substantial bodily injury or sickness' resulted." (quoting Falzone v. Busch, 214 A.2d 12, 17 (N.J. 1965))).  Accepting the facts alleged in the amended complaint as true and giving Plaintiff the benefit of all reasonable inferences, Plaintiff has stated a NIED claim under the second method.[7]

G.   Qualified Immunity

Defendants Smith, Warren, Caldwell, and Hirata assert they are entitled to qualified immunity.  "[O]fficers are entitled to

---

[7] The County Defendants argue in a one-sentence footnote that the tort claims must be dismissed because Plaintiff did not allege that he filed a timely notice of tort claim.  ECF No. 70 at 36 n.7.  This argument was not raised properly or briefed; therefore, the Court will not consider it.  See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (noting "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.").  A twenty-one-word footnote is hardly a "substantive . . . and comprehensive" argument.  ECF No. 81 at 15.

31

qualified immunity ... unless (1) they violated a federal
statutory or constitutional right, and (2) the unlawfulness of
their conduct was 'clearly established at the time.'" D.C. v.
Wesby, 138 S. Ct. 577, 589 (2018) (quoting Reichle v. Howards,
566 U.S. 658, 664 (2012)).  The first prong of the analysis
"asks whether the facts, [t]aken in the light most favorable to
the party asserting the injury, ... show the officer's conduct
violated a [federal] right[.]" Tolan v. Cotton, 572 U.S. 650,
655-56 (2014) (internal quotation marks and citations omitted)
(alterations and omissions in original).

    The Court will deny qualified immunity at this time.  The
amended complaint, when read in the light most favorable to
Plaintiff, states claims for violations of his First and
Fourteenth Amendment rights.  It is clearly established that
prison officials may not retaliate against a plaintiff for
filing a lawsuit or filing grievances. See Atkinson v. Taylor,
316 F.3d 257, 269-70 (3d Cir. 2003) (noting that a reasonable
prison official would know he violated a prisoner's access to
courts right if he retaliates against him for filing a lawsuit).
Moreover, "[t]hat the Eighth Amendment protects against future
harm to inmates is not a novel proposition." Helling v.
McKinney, 509 U.S. 25, 33 (1993).  COVID-19 may be a new virus,
but prisons have faced highly communicable diseases before and

have been found liable when they failed to respond

appropriately.  See Hutto v. Finney, 437 U.S. 678, 682–83

(1978); Gates v. Collier, 501 F.2d 1291, 1300 (5th Cir. 1974);

Hazel v. Russell, et al., No. 3:20-CV-0726, 2022 WL 17414908, at

*3 (D. Nev. Dec. 5, 2022) (denying qualified immunity because

"existing Supreme Court precedent gave government officers fair

warning that their alleged failure to abide by or enforce

compliance with NDOC guidelines concerning a serious

communicable disease [COVID-19] was unlawful"); Hamilton v.

Allison, No. 21CV2032, 2022 WL 17858021, at *4 (S.D. Cal. Dec.

22, 2022) ("Although the COVID-19 outbreak is novel, it is

decidedly not a novel proposition that prison officials cannot

knowingly subject prisoners to a heightened risk of contracting

a communicable disease.").

     The Court will deny qualified immunity without prejudice.

Defendants may reassert the qualified immunity defense upon

factual development.

H.   Request to Stay

     The County Defendants also ask the Court to stay

Plaintiff's complaint pending entry of a final order in the

Class Action.  The Court will exercise its discretion and

decline the request.  Plaintiff's complaint concerns specific

Defendants' actions within a particular timeframe whereas the

Class Action continues to address the ongoing conditions at the Jail as a whole.  The parties will have the opportunity to bring any specific concerns to the Court's or the Magistrate Judge's attention as the matter proceeds.

I.   <u>Motion to Seal</u>

The parties jointly move to seal their briefs and exhibits both supporting and opposing the motion to dismiss.  ECF No. 82.

"It is well-settled that there exists, in both criminal and civil cases, a common law public right of access to judicial proceedings and records.  The public's right of access extends beyond simply the ability to attend open court proceedings. Rather, it envisions a pervasive common law right to inspect and copy public records and documents, including judicial records and documents."  <u>In re Cendant Corp.</u>, 260 F.3d 183, 192 (3d Cir. 2001) (internal citations and quotation marks omitted).  A party seeking to seal portions of the judicial record from public view bears party "bears the heavy burden of showing that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure."  <u>Millhouse v. Ebbert</u>, 674 F. App'x 127, 128 (3d Cir. 2017) (per curiam) (internal quotation marks and citations omitted).  In deciding a motion to seal, the Court considers:

>     (a)  the nature of the materials or proceedings at issue;
>
>     (b)  the legitimate private or public interest which
>          warrants the relief sought;
>
>     (c)  the clearly defined and serious injury that would
>          result if the relief sought is not granted;
>
>     (d)  why a less restrictive alternative to the relief
>          sought is not available;
>
>     (e)  any prior order sealing the same materials in the
>          pending action; and
>
>     (f)  the identity of any party or nonparty known to be
>          objecting to the sealing request.

L. Civ. R. 5.3(c)(3).

Plaintiff alleges Defendants denied him medical care in connection with their inadequate response to the COVID-19 pandemic in the Cumberland Jail and retaliated against him when he filed grievances and the Class Action about the conditions. Filed under temporary seal is the County Defendants' brief in support of their motion to dismiss, ECF No. 70; Exhibit A, the CCDOC Inmate Handbook, ECF No. 71 at 1-38; Exhibit B, Inmate Request Forms filed by Plaintiff, ECF No. 71 at 39-60; Exhibit C, Plaintiff's medical records, ECF No. 71 at 61-226; Exhibit D, Plaintiff's cell records, ECF No. 71 at 227-47; Plaintiff's Opposition Brief and Exhibit A, ECF Nos. 78 & 79; and the County Defendants' reply brief, ECF No. 81.

The parties do not make any arguments why the County Defendants' Exhibit A should remain sealed, and the Court does

not see any.  The County Defendants must file Exhibit A on the
public docket.[8]

The parties seek to seal the County Defendants' Exhibit B,
Plaintiff's Inmate Request Forms, because the forms "contain
personal and sensitive medical information of Plaintiff" and
"personal identifying numbers for Plaintiff and staff of the
CCDOC whom are not parties to this litigation."  ECF No. 82-1 at
5.  They allege that "[r]edaction is not feasible; nearly all
information contained therein would be redacted."  Id.

Plaintiff has a legitimate privacy interest in his medical
records, see Doe v. Delie, 257 F.3d 309, 315 (3d Cir. 2001), but
he inserted the relevance of his medical record and conditions
into this action by alleging Defendants denied him necessary
medical care.  Plaintiff has a right to have his complaint
adjudicated in a public process, and the public has a right to
information about how county jails are responding to a public
health crisis.  "The public's interest is particularly
legitimate and important where, as in this case, at least one of
the parties to the action is a public entity or official."
Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir.
1994).  "'Broad allegations of harm, unsubstantiated by specific

─────────────────
[8] The County Defendants' Exhibits are filed as a single document,
ECF No. 71.

examples or articulated reasoning,' do not support a good cause showing." Id. (quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)).

The Court has reviewed Exhibit B and has found only a few instances of other inmates' name appearing in the forms. See ECF No. 71 at 48, 49, and 51. The parties may redact the other inmates' names, leaving the first and last initials, with little trouble. The information about staff appears limited to their position in the prison and any involvement in reviewing Plaintiff's grievances or providing medical treatment. The grievances do not contain "private" information about jail staff such that sealing would be appropriate.

Exhibit C contains portions of Plaintiff's medical records. ECF No. 71 at 61-226. These records do contain personal information about Plaintiff, but as previously noted Plaintiff put his physical and mental health at issue by filing this action. The parties may redact the records to prevent Plaintiff's full birthdate and social security number from being publicly accessible. The parties may also redact the name of Plaintiff's emergency contact, leaving the first and last initials, and their phone number. Id. at 204. The redactions will keep the sensitive personal information private while balancing public access to judicial records.

37

Exhibit D, Plaintiff's disciplinary and cell placement records are relevant to Plaintiff's retaliation claims but should be redacted to protect the privacy of other inmates.  The parties should redact other inmates' names, their housing locations, and disciplinary charges.  Id. at 227-41.

Finally, the parties ask the Court to seal all briefs related to the motion to dismiss because they reference "Plaintiff's medical requests, treatment, and medications."  ECF No. 82-1 at 7-9.  The Court will deny the request to seal the briefs for the reasons previously discussed.  However, the Court will grant the motion to seal Plaintiff's Exhibit A, ECF No. 79, and to allow for the redaction of Plaintiff's full birthdate. Id. at 6.  The Clerk will be ordered to lift the temporary seal on the briefs.

IV.  CONCLUSION

For the reasons set forth above, the Court will grant the motion to dismiss in part, Fed. R. Civ. P. 12(b)(6).  The motion to seal is granted in part, but the parties must file versions with appropriate redactions on the public docket.  The motion to seal is otherwise denied.

An appropriate Order follows.


Dated: January 5, 2023          s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

38